<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **RICKY KAMDEN-OUAFFO,**<br><br>Plaintiff,<br><br>v.<br><br>**FEIN, SUCH, KAHN & SHEPARD, P.C.,** *et al.,*<br><br>Defendants. | Civil Action No. 22-4174 (ZNQ) (RLS)<br><br>**OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon eight Motions to Dismiss ("the Motions") filed by: Defendants Borelli & Associates, P.L.L.C. ("BA"), Michael J. Borelli ("Michael Borelli"), and Anthony P. Malecki ("Anthony Malecki") (collectively, "Borelli Defendants") (ECF No. 28); Defendants Fein, Such, Kahn, Shepard, P.C. ("FSKS"), Dolores M. DeAlmeida ("Defendant DeAlmeida"), Brian P. S. McCabe, and Philip A. Kahn ("Defendant Kahn") (collectively, "FSKS Defendants") (ECF No. 29); Defendant London Fischer, LLP ("London Fisher Defendant") (ECF No. 54); Defendant TD Bank N.A. ("TD Defendant" or "TD Bank") (ECF No. 60); Defendants Richard M. Hunter and Luboja and Thau, LLP (collectively, "Luboja Defendants") (ECF No. 61); Defendants Hon. Robert T. Lougy, A.J.S.C. and Michelle Smith (ECF No. 69); Defendant Jonathan C. Thau LLP (ECF No. 89); Defendants Aida Costello, Peter Given, PepsiCo Inc. ("Defendant PepsiCo"), and Naijie Zhang (collectively, "Pepsi Defendants") (ECF No. 92), pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated herein, the Court will GRANT the Motions.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing a Complaint against Borelli Defendants and FSKS Defendants on June 21, 2022. (*See* ECF No. 1.) Plaintiff thereafter filed an Amended Complaint ("Am. Compl.") as of right under Rule 15(a)(1)(b), naming more than fifteen additional Defendants. (ECF No. 15.)

On January 7, 2023, Plaintiff filed a letter with the Court seeking dismissal of Count Ten of the Amended Complaint without prejudice. (ECF No. 103.) The Court thereafter dismissed Count Ten, without prejudice. (ECF No. 111.)

### A.     Alleged Unlawful Levy and Garnishment of Plaintiff's TD Bank Accounts

Plaintiff claims that on or around March 2, 2022, FSKS Defendants, along with the help of Defendant Armando B. Fontoura, the Essex County Sheriff ("Defendant Fontoura"), placed a levy and garnishment on Plaintiff's TD Bank accounts and seized thousands of dollars of Plaintiff's funds on behalf of their clients, Borelli Defendants. (Am. Compl. ¶ 64.) On that evening, Plaintiff's TD Bank card repeatedly declined to make electronic payment at the checkout point in a store in New Jersey. (*Id*. ¶ 65.) Plaintiff thereafter checked his bank account online and discovered that both his checking and savings account had a zero balance. (*Id*. ¶ 66.) Plaintiff called TD Defendant to report that his bank card had repeatedly declined payment and that his bank account may have been fraudulently accessed. (*Id*. ¶ 67.)

TD Defendant informed Plaintiff that Defendant Fontoura had directed them to seize Plaintiff's funds and to place a levy and garnishment on his bank accounts. (*Id*. ¶ 68.) TD Defendant informed Plaintiff that the levy and garnishment had been sought by Defendant BA

who had sued Plaintiff, and that TD Defendant was required to cooperate with state authorities. (*Id*. ¶ 69.)

On March 3, 2022, an employee of TD Defendant emailed Plaintiff a copy of a letter in which TD Bank stated that it had seized an amount of $2,691.76 from Plaintiff's TD Bank account. (*Id*. ¶ 71.)  Plaintiff alleges, however, that the amount seized from Plaintiff's bank accounts was about three times the amount stated on TD Defendants' Letter.  (*Id*.)

On March 4, 2022, Plaintiff contacted the Essex County Sheriff who informed Plaintiff that a Writ of Execution had been issued against Plaintiff for a debt amount of $42,938.39 owed by Plaintiff to Defendant BA, who was represented by FSKS.  (*Id*. ¶ 72.)  The Essex County Sheriff's Office emailed a document to Plaintiff and provided Plaintiff with the phone contact for FSKS.  (*Id*. ¶ 73.)  Plaintiff contacted FSKS by phone and left a voicemail.  (*Id*. ¶ 74.)  Defendant Kahn returned Plaintiff's call and informed him that they had documents proving that Defendant BA provided legal services to Plaintiff and Plaintiff did not pay for those legal services.  (*Id*. ¶ 75.) Plaintiff asked Defendant Kahn to email him the documents, but Defendant Kahn refused.  (*Id*.) Plaintiff then asked Defendant Kahn about the nature of the Documents, but Defendant Kahn hung up the phone.  (*Id*. ¶ 76.)

Plaintiff then reported Defendant Kahn's behavior to the Essex County Sheriff's Office and the Sheriff informed Plaintiff that Plaintiff was entitled to know the basis and supporting evidence for the alleged debt.  (*Id*. ¶ 77.)  Plaintiff called FSKS and left another message.  (*Id*. ¶ 78.)  Plaintiff's second call was returned by Defendant DeAlmeida, who informed Plaintiff that they had a file since the year 2019 with numerous supporting documents showing that Plaintiff owed Defendant BA, Defendant Michael Borelli, and Defendant Anthony Malecki for unpaid legal services.  (*Id*. ¶ 80.)  Plaintiff then asked Defendant DeAlmeida to explain why Defendant BA's

account statements communicated to the Plaintiff and dated later than the year 2019 had only been showing a due amount of $1,437.66.  (*Id*. ¶ 81.)  Defendant DeAlmeida failed to provide any explanation.  (*Id*. ¶ 82.)  Plaintiff also provided Defendant DeAlmeida with an electronic copy of an example of Defendant BA's communication to Plaintiff of accounting statements dated later than the year 2019 and showing a balance of $1,437.66.  (*Id*. ¶ 83.)  Defendant DeAlmeida then disclosed to Plaintiff that they had obtained a court order access to Plaintiff's bank account based upon arbitration awards issued by the Supreme Court of the State of New York.  (Id. ¶ 84.)

Defendant DeAlmeida emailed Plaintiff a copy of the arbitration award and the related court order from the state of New York, along with an arbitration demand which appeared to have been authored by Defendant BA.  (*Id*. ¶ 85.)  The Arbitration award issued by Defendants BA, Michael Borelli, and Anthony Malecki showed that the debt claimed was dated as of July 1, 2014.  (*Id*. ¶ 86.)  The arbitration award issued by Defendant Settlement Systems and signed on by Defendant "Hearing Officer J. . ." was issued on September 25, 2014.  (*Id*. ¶ 87.)  An order affirming the arbitration award from Defendant Settlement Systems Inc was issued on August 7, 2015 by Defendant Judge Robert A. Bruno, J.S.C. ("Defendant Judge Bruno") of the Supreme Court of the State of New York, Nassau County, in *Borelli Associates, P.L.L.C. (Petitioner) v. Kamden-Ouaffo (Respondent)*, Index No. 604931/15.  (*Id*. ¶ 88.)  Defendant Judge Bruno's order was based on an arbitration award titled Borelli & Assoc. v. Kamden Ouaffo SSI # 45025, which was supposedly held by Defendant Settlement Systems Inc. on September 24, 2014 without Plaintiff and resulting in the issuance by Defendant "Hearing Officer J. . ." of an award for Defendant BA.  (*Id*. ¶ 89.)

A Writ of Execution was issued on January 13, 2022 by Defendant Judge Robert Lougy, A.J.S.C. ("Defendant Judge Lougy"), who is a judge of the superior court of New Jersey in Mercer

County in the matter of *Borelli & Associates v. Kamden-Ouaffo*.  (*Id.* ¶ 90.)  This Writ of Execution stated that judgment was entered by the superior court of New Jersey on September 24, 2021.  (*Id.*)  The debt claimed by Defendant BA dated back to July 1, 2014, whereas the judgment proceedings they obtained at the superior court of New Jersey were instituted on September 24, 2021.  (*Id.* ¶ 91.)  Plaintiff claims the time difference between July 1, 2014 and September 24, 2021 is seven years and two months, and the statute of limitations for collection of debt from a citizen of the state of New Jersey is six years.  (*Id.* ¶ 92.)

Plaintiff has no recollection of having received the statutory notices and service of process for the proceedings held in New York.  (*Id.* ¶ 95.)  The arbitration award documents and orders from New York acknowledged that Plaintiff was never a participant in any of the proceedings initiated by Defendants in New York for their unpaid attorney fees.  (*Id.* ¶ 96.)

Plaintiff informed Defendant DeAlmeida that he did not know why Defendant BA would have pursued litigation for attorney fees because he had paid Defendant BA's bills and invoices totaling to around $20,000 to $40,000.  (*Id.* ¶ 97.)  Defendant BA's accounting statements, which are dated later than the year 2019, showed that Plaintiff only owed $1,437.66 and that Plaintiff did not pay that extra amount because he felt it was improperly assessed and excessive.  (*Id.* ¶ 98.)

Plaintiff informed Defendant DeAlmeida that he wanted a copy of the attorney work upon which their clients assessed that Plaintiff still owed an additional $42,938.39.  (*Id.* ¶ 99.)  Defendants FSKS, Kahn, DeAlmeida and Brian McCabe refused to produce any of the evidence Plaintiff requested.  (*Id.* ¶ 101.)  Plaintiff also asked Defendants FSKS and DeAlmeida to provide him with a copy of the Proof of Service in the New York matters.  (*Id.* ¶ 102.)  This request, however, was refused.  (*Id.*)

Plaintiff thereafter filed a motion with the superior court of New Jersey seeking vacatur of its Writ of Execution.  (*Id.* ¶ 104.)  Defendants FSKS, Kahn, Dealmeida, and McCabe opposed Plaintiff's motion and still refused to produce the documents Plaintiff had requested.  (*Id.* ¶ 108.)  The Superior Court of New Jersey decided that Plaintiff should have filed a motion to vacate at the Supreme Court of the State of New York.  (*Id.* ¶ 109.)

Plaintiff claims that Defendants FSKS, Kahn, McCabe, DeAlmeida, BA, Michael Borelli, and Anthony Malecki violated 15 U.S.C. §1692, the Fair Debt Collections Practices Act.  (*Id.* ¶ 111.)  Plaintiff determined that because of this, filing a motion to vacate at the Supreme Court of the State of New York could no longer suffice to redress his grievances.  (*Id.*)

Plaintiff claims that even after the filing of the instant lawsuit, Plaintiff continued to ask Borelli Defendants and FSKS Defendants to provide him with a copy of the Proof of Service in the New York Matters.  (Id. ¶ 112.)  Borelli and FSKS Defendants, however, never provided him with the same.  (*Id.*)  Plaintiff claims that the failure to provide him with the Proof of Service is a violation of due process.  (*Id.*)  Plaintiff additionally claims that Defendant Judge Bruno and Defendant Judge Lougy also violated his due process and equal protection rights because they held proceedings and issued orders against him without the required notices.  (*Id.* ¶ 113.)

As an immediate result of Defendants BA, Michael Borelli, and Anthony Malecki, Plaintiff borrowed an amount of $8,800.00 from his IRA account at TD Bank to buy food, shelter, and to settle bills.  (*Id.* ¶ 115.)  Plaintiff claims he could not return the money he had withdrawn from his IRA account and thus, federal taxes and penalties have accrued on those funds.  (*Id.* ¶ 116.)  Also, as a result of emptying Plaintiff's bank account, TD Defendant charged Plaintiff with processing fees resulting in overdraft fees.  (*Id.* ¶ 117.)

Plaintiff thereafter commenced this instant action to seek a redress of the grievance caused to him by Defendants.  (*Id*. ¶ 118.)  After service of process was effected upon Defendant Anthony Malecki,  Defendant Anthony Malecki sent an email to Plaintiff asking Plaintiff to voluntarily dismiss the claims against him without prejudice because he had not worked at Borelli & Associates since July of 2015 and had no knowledge of any alleged collection attempts or unpaid invoices.  (*Id*. ¶ 119.)

### B.      Claims against PepsiCo

Plaintiff, through the law offices of Albert Breud, filed a lawsuit in 2010 in the Supreme Court of the State of New York against PepsiCo, Index No. 22625/10 (the "2010 PepsiCo Matter"). (*Id*. ¶ 120.)  In that action, Plaintiff's lawyer successfully defended a Motion to Dismiss filed by Defendant PepsiCo.  (*Id*. ¶ 121.)  During discovery, Plaintiff and his lawyer disagreed as to the appropriate qualifications for an expert witness to retain for the case.  (*Id*. ¶ 122.)  Plaintiff recommended an expert with experience with the Food and Drug Administration ("FDA") because Plaintiff had alleged that he was retaliated against during his employment with PepsiCo for having objected to and opposed the use of formaldehyde in its flavoring system.  (*Id*. ¶¶ 124, 125.) Plaintiff believed the Delany Clause incorporated into the Federal Food, Drug, and Cosmetic Act by the Food Additives Amendment of 1968, required the FDA to ban food additives which are found to cause or induce cancer in humans or animals.  (*Id*. ¶ 126.)

Plaintiff's lawyer, Albert Brued, withdrew from representing him with the court's permission.  (*Id*. ¶ 127.)  Plaintiff claims that his lawyer informed him that his claim was worth $50,000,000.00.  (*Id*. ¶ 128.)  Albert Brued communicated to Plaintiff that he made a settlement demand to the law firm representing PepsiCo.  (*Id*. ¶ 129.)

Plaintiff thereafter retained the law firm of Andrew Schatkin.  (*Id*. ¶ 130.)  Plaintiff claims that to his knowledge, Mr. Schatkin conducted depositions of PepsiCo witnesses including

PepsiCo employees, Defendants Dr. Naijie Zhang ("Defendant Zhang"), Dr. Peter Given ("Defendant Given") and Aida Costello ("Defendant Costello"). (*Id*. ¶ 131.) Thereafter, Mr. Schatkin withdrew as Plaintiff's attorney, with Plaintiff's consent. (*Id*. ¶ 133.)

Plaintiff then contacted Defendant BA, which asked Plaintiff to pay a $10,000.00 retainer fee. (*Id*. ¶ 134.) Plaintiff consented, paid the retainer, and hired Defendant BA to represent him in his 2010 PepsiCo Matter. (*Id*. ¶¶ 135, 136.) Defendant Anthony Malecki thereafter notified Plaintiff that PepsiCo had filed a motion for summary judgment. (*Id*. ¶ 137.)

After a relatively short time, Defendant BA started sending Plaintiff billing statements with a balance due, which Plaintiff paid, in addition to the original retainer amount. (*Id*. ¶ 138.) In total, for the time Defendant BA represented Plaintiff in the 2010 PepsiCo Matter, Plaintiff paid a total of about $20,000 to $40,000. (*Id*. ¶ 139.)

Around July 3, 2013, Defendant Malecki informed Plaintiff that the Supreme Court of the State of New York had dismissed the 2010 PepsiCo Matter and provided Plaintiff a copy of the court's Opinion (the "2010 New York Supreme Court Opinion"). (*Id*. ¶¶ 141, 142.) Upon reviewing the Opinion, Plaintiff was troubled that it stated that Defendant Malecki had stipulated with PepsiCo to the dismissal of three of Plaintiff's claims, although three of those claims had successfully been defended by his prior lawyer, Albert Brued, on PepsiCo's motion to dismiss. (*Id*. ¶ 144.) Plaintiff also took issue with the 2010 New York Supreme Court Opinion statement that Plaintiff's expert report was defective, and that the expert indicated that he was not provided the information he asked for from Plaintiff's then-lawyer. (*Id*. ¶ 145.) Further, Plaintiff took issue with the fact that the Opinion stated that Defendant Malecki stipulated with PepsiCo that the Aroma Technology Plaintiff was developing at PepsiCo was merely laboratory research with no

commercial application in view, and that the Occupational Safety and Health Administration ("OSHA") investigator had said the same.  (*Id*. ¶ 146.)

Plaintiff claims that he had produced several pictures of bottles and jars containing samples of PepsiCo formaldehyde-based flavoring system.  (*Id*. ¶ 148.)  In addition, Plaintiff had conducted instrumental analysis on the PepsiCo formaldehyde-based products including "electron microscopy, Gas Chromatography."  (*Id*. ¶ 149.)  Plaintiff found that PepsiCo's formaldehyde-based products had excellent shelf stability and mechanical properties, which made them very desirable from the commercial standpoint.  (*Id*. ¶ 150.)  Plaintiff claims that because formaldehyde was an ingredient in the PepsiCo formaldehyde-based flavoring products, Plaintiff continued to object to any further testing beyond instrumental analysis and refused to subject to human testing.  (*Id*. ¶ 153.)  Defendants Zhang and Given, who were PepsiCo supervisors, kept pushing for the human exposure to the PepsiCo formaldehyde-based products by sniffing test.  (*Id*. ¶ 154.)

Plaintiff claims that Defendant Zhang directed Plaintiff to prepare samples of a formaldehyde based flavoring system, named by PepsiCo as SM004, for human sensory analysis.  (*Id*. ¶ 155.)  Plaintiff obliged and when the samples were ready, Defendant Zhang directed Plaintiff to call coworkers and subject them to sniffing the SM004, but Plaintiff declined to do so.  (*Id*.)  Further, Plaintiff claims that he found in documents that Defendant Given communicated a message to PepsiCo Corporation on September 16, 2009 indicating that Plaintiff's contract was terminating October 5 and that it may impact their decision on inventorship.  (*Id*. ¶ 156.)  Based on this, Plaintiff has no understanding how Defendant Anthony Malecki stipulated that PepsiCo had not had formaldehyde based flavoring products in the laboratory.  (*Id*. ¶ 157.)  Plaintiff claims that he informed Defendant Malecki that PepsiCo's employees, Defendants Zhang, Given, and

Costello were not being truthful in their depositions that there was no plan to introduce this encapsulate into the products for public consumption.  (*Id*. ¶ 158.)

Plaintiff additionally found that the United States Patent and Trademarks Office ("USPTO") had published a patent application titled "Reasonable Entrapment of Aroma Using Polymetric Matrix", dated January 12, 2012, with PepsiCo Inc. being the sole Assignee and Defendants Given and Zhang being the inventors (the "Patent").  (*Id*. ¶ 160.)  Plaintiff alleges that this patent was based on the work he did at PepsiCo and Defendants PepsiCo, Given, and Zhang had removed Plaintiff's name from the patent invention disclosure prior to filing.  (*Id*. ¶ 161.)

Among the discovery files produced by PepsiCo were emails in which Defendants Given and Zhang agreed to remove Plaintiff's name from the Patent invention disclosures which were based on or derived from Plaintiff's work.  (*Id*. ¶ 162.)

The USPTO issued the Patent on July 3, 2013.  (*Id*. ¶ 164.)

The 2010 New York Supreme Court Opinion indicated that  that Plaintiff was convinced that PepsiCo wanted to commercialize the technology, and that Plaintiff was concerned that PepsiCo would launch the formaldehyde containing version of the technology which Plaintiff had tested and  found to be of superior performance as a delivery system during stability tests.  (*Id*. ¶ 165.)  The 2010 New York Supreme Court Opinion did not find that the patent publication was acceptable evidence that PepsiCo had a plan to commercialize the technology.  (*Id*.)  Plaintiff's whistleblower complaint was therefore dismissed.  (*Id*. ¶ 166.)

Plaintiff alleges that new evidence was therefore required for him to demonstrate that PepsiCo had always had a plan to introduce this encapsulate into the products for public consumption.  (*Id*. ¶ 167.)  Plaintiff discovered this evidence after FSKS Defendants placed a levy and garnishment on Plaintiff's TD Bank account.  (*Id*. ¶ 168.)  Plaintiff thereafter discovered  that

United States District Judge Katherine B. Forrest issued an Opinion in the matter of *Scentsational Technologies LLC v. PepsiCo*, Docket No. 13-cv-8645 stating that PepsiCo had indicated that it had not yet commercialized the aroma technology of the Patent because of the cost and the lack of consumer demand. (*Id*. ¶ 170.) Scentsational Technologies LLC had filed its lawsuit a few months after the Patent was granted and Plaintiff's Whistleblower claim was dismissed with prejudice. (Id. ¶ 174.)

Plaintiff alleges that Defendant Richard M. Hunter ("Defendant Richard Hunter") of the Defendant law firm Luboja and Thau LLP and/or of Jonathan C. Thau PLLC, Defendant Malecki of the Defendant law firm BA and/or London Fischer LLP, Defendants Given, Zhang, and Costello, had falsely testified at the Supreme Court of the State of New York that PepsiCo did not intent to commercialize the technology Plaintiff was developing when in fact, they were working behind the scene to commercialize the same technology with no regard to the alleged unlawful conduct. (*Id*. ¶ 179.) Plaintiff claims that this false testimony misled the Supreme Court of the Sate of New York to grant summary judgment to PepsiCo and dismiss Plaintiff's Complaint with prejudice. (*Id*. ¶ 180.)

## II.    LEGAL STANDARD

### A.    12(b)(2)

Once a defendant raises a jurisdictional defense under Rule 12(b)(2), the plaintiff bears the burden of establishing sufficient facts showing that jurisdiction is proper over each defendant. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007); *see Mellon Bank PSFS, National Association v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). A plaintiff may only satisfy this burden "through sworn affidavits or other competent evidence" – reliance on pleadings and allegations alone is insufficient. *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd*., 735 F.2d 61, 67 n.9 (3d Cir.

1984)) (noting Rule 12(b)(2) is "inherently a matter which requires resolution of factual issues outside the pleadings").  Where, as here, the Court has not held an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only establish a prima facie case of personal jurisdiction and ... is entitled to have its factual allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *Metcalfe v. Renaissance Marine, Inc*., 566 F.3d 324, 330 (3d Cir. 2009).

A federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A).  New Jersey's long-arm statute, N.J. Civil Practice Rule 4:4–4(c), applicable in this case, extends jurisdiction over non-residents "'to the uttermost limits permitted by the United States Constitution.'" *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 698 (3d Cir. 1990) (citing *Charles Gendler Co. v. Telecom Equity Corp*., 102 N.J. 460, 469 (1986)).  To establish personal jurisdiction, a "plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')."  *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984)).

### B.    12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them."  *McTernan v. City of York,* 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted).  To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

Where a motion to dismiss attaches or relies on documents extrinsic to the pleadings, the court must first consider whether such documents may permissibly be considered.  Courts may consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *United States v. Estate of Elson*, 421 F. Supp. 3d. 1, 5 (D.N.J. 2019) (quoting *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016)), but not "extraneous evidence submitted by the defense" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  When presented with extrinsic documents not properly considered on a motion to dismiss, the court may disregard them, deny the motion, or convert it into a motion for summary judgment and provide a reasonable opportunity for all parties to present material pertinent to the motion.  *See* Fed. R. Civ. P. 12(d); *Dix v. Total Petrochemicals USA, Inc.*, Civ. No. 10-3196, 2011 WL 2474215, at *2 (D.N.J. June 20, 2011).

## III.   DISCUSSION

### A.   *Rooker-Feldman*

The *Rooker-Feldman* doctrine eliminates most of Plaintiff's claims.  *See Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). This doctrine bars suits that ask federal district courts to reverse state-court decisions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).  It applies where "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-

court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon*, 544 U.S. at 284) (internal quotations and brackets omitted).

Most of the Amended Complaint runs afoul of *Rooker-Feldman* because finding for Plaintiff on any of these counts would require reversal of the judgment in the state-court actions.

### 1.   Counts One and Two

Counts One and Two are based on the contention that the proceedings held by state court Defendants Judge Bruno, Judge Lougy, and State Court Arbitrator-Defendant Hearing Officer "J. . ." of Defendant Settlement Systems Inc. abridged Plaintiff's rights secured by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution when they held proceedings without notice being given to Plaintiff.  (Am. Compl. ¶¶ 201–06, 212–15.)  Plaintiff claims that because of the unconstitutional court orders, Defendants FSKS, Kahn, DeAlmeida, and McCabe, with the help of Defendant Fontoura, unlawfully placed a levy and garnishment on Plaintiff's TD Bank Account.  (*Id*. ¶ 207–09, 218–20.)

Should this Court find for Plaintiff in Counts One and Two, it would be required to review and reject the writ of execution and arbitration awards issued by Defendant Judge Bruno and Defendant Judge Lougy.  Such a finding runs afoul of *Rooker-Feldman*.  Accordingly, Counts One and Two will be dismissed with prejudice. [1]

### 2.   Count Three

Count Three is partially based on the contention that Defendant Judge Lougy did not have jurisdiction to enter a writ of execution against Plaintiff because the six-year statute of limitation

---

[1]  The *Rooker–Feldman* doctrine strips the District Court of subject matter jurisdiction.  Accordingly, dismissal with prejudice is proper.  *See Bakshi v. Bergen Cty. Superior Court*, 687 F. App'x. 215, 218 (3d Cir. 2017).

to file a civil lawsuit for the collection of debt had passed, resulting in Defendant Judge Lougy's writ of execution being void.  (*Id.* ¶¶ 225, 226.)  Plaintiff claims that as a result of Defendant Judge Lougy's unlawful Orders, an unlawful lien and garnishment was placed on his TD Bank account.  (*Id.* ¶ 228.)  Finding for Plaintiff in Count Three, therefore, would require this Court to review Judge Lougy's writ of execution order.  Such a finding would also violate *Rooker-Feldman*.

Count Three additionally claims that Defendant TD Bank's withdrawal of an amount higher than the $2,691.76 that was communicated to him was a violation of the Fair Debt Collection Practices Act ("FDCPA").  (*Id.* ¶ 231.)  Such a claim has not yet been litigated in state court and would not require this Court to review a prior court's decision.

Accordingly, Count Three will be dismissed with prejudice insofar as it seeks this Court to review Defendant Judge Lougy's writ of execution order.  Plaintiff's claim of Defendant TD Bank's violation of the FDCPA will therefore be considered in terms of its sufficiency in the face of Defendants' 12(b)(6) argument.

### 3.   Counts Four through Six

Counts Four and Five are based on the theory that Borelli Defendants and FSKS Defendants failed to disclose during the State Court proceedings that Plaintiff had paid Defendant BA an amount of $20,000.00 to $40,000.00.  (*Id.* ¶¶ 236, 244.)  Count Six alleges conspiracy and collusion between the Defendant-attorneys and law firms in failing to disclose the amount Plaintiff paid.  (*Id.* ¶¶ 249–56.)  Plaintiff claims that the Arbitration Award issued by Arbitrator Defendant Hearing Officer "J. . ." of Defendant Settlement Systems Inc. was in violation of the parties' prior agreement and resulted in the unconstitutional levying and garnishing of Plaintiff's TD Bank account.  (*Id.* ¶¶ 239–40, 247–48.)  Finding for Plaintiff on Counts Four through Six would require this Court to review the Supreme Court of the State of New York's decision to affirm the

arbitration award, in violation of *Rooker-Feldman*.  (*Id*. ¶¶ 87, 88.)  Accordingly, the Court will dismiss Counts Four through Six with prejudice.

        4.    <u>Counts Seven and Eight</u>

Count Seven is based on the fact that because United States District Judge Forrest in 2018 found that PepsiCo had a plan to commercialize its flavor technology program, Defendant Richard Hunter, Defendant Anthony Malecki, Defendant Zhang, Defendant Given, and Defendant Costello falsely testified in the Supreme Court of the State of New York.  (*Id*. ¶¶ 260, 261.)  Plaintiff additionally alleges in Count Seven that Defendant Anthony Malecki and Defendant Richard Hunter of the law firm Luboja and Thao LLP wrongfully stipulated regarding PepsiCo's intention to commercialize technology Plaintiff was developing.  (*Id*. ¶¶ 261–63.)  Plaintiff claims that the false testimony and the wrongful stipulation caused the Supreme Court of the State of New York to unjustly grant summary judgment to PepsiCo.  (*Id*. ¶¶ 260–67.)  In Count Eight, Plaintiff claims the false testimony and wrongful stipulation caused fraud on the Court.  (*Id*. ¶¶ 269–79.)

Finding for Plaintiff in Counts Seven and Eight would require the Court to review and reject the Supreme Court of the State of New York's summary judgment decision.  Such a finding runs afoul of *Rooker-Feldman*.  Counts Seven and Eight will therefore be dismissed with prejudice.

**B.**    **FDCPA Claim - Count Three**

Count Three claims that Defendant TD Bank's withdrawal of an amount higher than the $2,691.76 that was communicated to him was a violation of the FDCPA.  (*Id*. ¶ 231.)

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  A plaintiff alleging a FDCPA claim must prove "(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged

practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressle*r, 791 F. 3d 413, 417 (3d Cir. 2015).

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Here, the Amended Complaint fails to allege that Defendant TD bank is a debt collector, that its primary business purpose is to collect debts, or that TD Bank regularly collects, or attempts to collect, debts owed to another person or business.  Accordingly, Plaintiff fails to properly assert a FDCPA claim against Defendant TD Bank.  Count Three, insofar as it asserts an FDCPA claim against Defendant TD Bank will therefore be dismissed without prejudice.

### C.    Count Nine

In Count Nine, Plaintiff alleges conspiracy and collusion in the 2010 Pepsico Matter based on Defendants Luboja and Thau, BA, Jonathan C. Thau PLLC, London Fisher, Anthony Malecki and Richard Hunter' failure to correct the false testimony in the Supreme Court of the State of New York.  (*Id*. ¶ 284.)

> 1.    *Whether the Court Has Personal Jurisdiction Over Defendants Michael J. Borelli Esq., Anthony Malecki, Esq., or Richard Hunter, Esq.*

Borelli Defendants first argue that Plaintiff has failed to allege or establish that New Jersey has personal jurisdiction—via specific or general jurisdiction—over Defendant Michael J. Borelli, Esq. ("Michael Borelli") or Anthony Malecki, Esq. ("Anthony Malecki").  (Borelli Moving Br. at 3, 5, 8.)  In opposition, Plaintiff argues that Defendants have not demonstrated that this Court is not the proper venue to litigate the wrongful acts of their co-conspirators.  (Opp'n Br. to Borelli

and FSKS at 6.)  Plaintiff contends that because he alleged a plausible and viable federal claim against FSKS Defendants, this Court also has supplemental and ancillary jurisdiction over their co-conspirators, including the Borelli Defendants.  (*Id*.)  In reply, Borelli Defendants argue that supplemental jurisdiction does not create personal jurisdiction over Michael Borelli or Anthony Malecki.  (Borelli Reply Br. at 1.)

Luboja Defendants similarly argue that the state of New Jersey does not have personal jurisdiction over Defendant Richard Hunter.  (ECF No. 61-1 at 3.)  Luboja Defendants assert that Defendant Richard Hunter is not licensed to practice law in New Jersey and all the services he provided in the underlying action were provided in New York.  (*Id*. at 4.)   In opposition, Plaintiff argues that "this case is not a ping pong ball to be batted back and forth between the Eastern District of New York and the District of New Jersey, citing *Tatar v. Levi*, Civ. No. 08-4422, 2010 WL 3740610 (D.N.J. 2010).  (ECF No. 100 at 2.)

a)     <u>General Jurisdiction</u>

General jurisdiction is satisfied when the defendant's affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citation and quotation marks omitted).  For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, (2014) (internal citations omitted).  Aside from these exemplar bases, general jurisdiction may arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761 n.19.

Here, Borelli and Luboja Defendants argue that Michael Borelli, Anthony Malecki, and Richard Hunter are not subject to general jurisdiction in the State of New Jersey.  (Borelli Moving

18

Br. at 6.)  Plaintiff does not address the issue of general jurisdiction in his opposition brief to either Borelli Defendants' or Luboja Defendants' Motion.  Michael Borelli and Anthony Malecki are described in the Amended Complaint as being residents of the state of New York.  (Am. Compl. ¶¶ 12, 14.)  Further, Defendant Richard Hunter is a resident of New York.  (*Id*. ¶ 44.)  Plaintiff fails to provide any evidence to demonstrate that the Defendants Michael Borelli, Anthony Malecki, or Richard Hunter possess the sort of systematic and continuous contacts with the state of New Jersey to warrant this Court exercising general jurisdiction here.  Accordingly, the Court finds it lacks general jurisdiction over Defendants Michael Borelli, Anthony Malecki and Richard Hunter.

b)   Specific Jurisdiction

A finding of specific personal jurisdiction requires courts to examine whether: (1) the defendant purposefully directed its activities at the forum state or otherwise purposefully availed itself to the privileges of conducting activities within the state; (2) the plaintiff's claims arise out of or relate to one of those specific activities; and (3) the assertion of jurisdiction comports with notions of fair play and substantial justice.  *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).  The focus of whether specific jurisdiction over a nonresident defendant exists is on "'the relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984)).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Id*. at 284.

Borelli Defendants argue that Plaintiff has failed to demonstrate that either Michael Borelli or Anthony Malecki committed a single act in New Jersey that is substantially related to the adjudication of this claim.  (Borelli Moving Br. at 8.)  Plaintiff does not address the issue of specific jurisdiction in his opposition brief.  (*See generally* Opp'n Br. to Borelli and FSKS.)

Plaintiff has the burden to prove that his claims arise out of or relate to the Defendants' contacts with New Jersey for this Court to assert specific jurisdiction over Michael Borelli and Anthony Malecki. *See Burger King Corp. v. Rudewicz*, 471 U.S. 462 (1985). Plaintiff may satisfy this burden through sworn affidavits or other competent evidence. *See Patterson,* 893 F.2d at 603-04. The Amended Complaint lacks any allegation that connects Defendants Michael Borelli, Anthony Malecki or Richard Hunter to the state of New Jersey. Accordingly, because Plaintiff fails to assert how his cause of action against Defendants Michael Borelli, Anthony Malecki and Richard Hunter is related to New Jersey, the Court cannot find that it has specific jurisdiction over these Defendants.

In sum, the Court lacks personal jurisdiction over Defendants Michael Borelli, Anthony Malecki and Richard Hunter. Counts Nine and Ten, insofar as they are asserted against these Defendants, will therefore be dismissed without prejudice.

2. Whether Plaintiff Properly States a Claim in Count Nine

In Count Nine, Plaintiff alleges conspiracy and collusion in the 2010 PepsiCo Matter based on Defendants' Luboja and Thau, BA, Jonathan C. Thau PLLC, London Fisher, Anthony Malecki, Richard Hunter, Dr. Given, Dr. Zhang, Aida Costello, and PepsiCo failure to correct the false testimony in the Supreme Court of the State of New York. (*Id.* ¶ 284.) To properly plead an unconstitutional conspiracy, a plaintiff must allege specific facts addressing the time the agreement was made, the period of the conspiracy, the exact parties to the agreement, and the object of the conspiracy. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010). Although Plaintiff refers to collusion (Am. Compl. ¶ 284), his conclusory allegations — even liberally construed in a light most favorable to him — are insufficient to suggest that a conspiratorial agreement existed between the defendants. *See Bell Atl. v. Twombly*,

550 U.S. 544, 555-57 (2007) (holding that conclusory allegations that the defendants acted unlawfully were insufficient to state a claim).

Accordingly, Plaintiff fails to properly plead a conspiracy in Count Nine.  Count Nine, as it relates to Defendants BA, Luboja and Thau LLP, London Fischer, Dr. Given, Dr. Zhang, Aida Costello, and PepsiCo Inc. will therefore be dismissed without prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Counts One, Two, and Four through Eight (in their entirety) and Count Three   (as plead against Borelli Defendants, FSKS Defendants, Judge Lougy, and Settlement Systems Inc) will be dismissed with prejudice as finding for Plaintiff on those counts would violate *Rooker-Feldman*.   Count Three as it is plead against Defendant TD Bank will be dismissed without prejudice.  Count Nine will be dismissed without prejudice.  Plaintiff is granted leave to file a Second Amended Complaint, limited to remedying the deficiencies identified in this Opinion with respect to claims dismissed without prejudice, within 30 days.  Plaintiff is cautioned that if he fails to remedy those deficiencies, the Court will consider dismissing his claims with prejudice on a subsequent Motion to Dismiss.  An appropriate Order follows.


Date: **May 24, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**